IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
09-80918-CIV-MARRA/JOHNSON

MILLER'S ALE HOUSE, INC.,      )
      )
      Plaintiff,      )
      )      **MEMORANDUM IN SUPPORT OF MOTION**
v.      )      **FOR SUMMARY JUDGMENT**
      )
BOYNTON CAROLINA ALE HOUSE,      )
LLC,      )
      )
      Defendant.      )

## I. THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Optimum Tech., Inc. v. Henkel Consumer Adhesives, Inc.,* 496 F.3d 1231, 1241 (11th Cir. 2007) (Court of Appeals affirming grant of summary judgment in favor of defendant for lack of evidence of trademark infringement).  This burden may be met by the use of affidavits, exhibits, depositions, and other discovery materials. *Id.*  Once a moving party has met its burden, the opposing party must go forward and produce sufficient evidence to support its own contentions. *Int'l Stamp Art, Inc. v. U.S. Postal Serv.,* 456 F.3d 1270, 1274 (11th Cir. 2006) (affirming summary judgment for defendant in trademark case). Uncontroverted evidence is taken as true. *Wallace v. Texas Tech Univ., 80 F.3d 1042, 1048* (5th Cir. 1996).  However, "[a] mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (citation omitted).

The purpose of summary judgment is to save the time and expense of trial when there is no genuine issue of material fact and additional evidence beyond that available in the motion for summary judgment could not reasonably be expected to change the result. *Pure Gold, Inc. v. Syntex (U.S.A,), Inc*., 739 F.2d 624,627 (Fed. Cir. 1984).  Thus, summary judgment is mandated where a party "fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Welding Serv., Inc. v. Forman,* 509 F.3d 1351 (11th Cir. 2007) (affirming motion for summary judgment where alleged trademark was held to be generic); *see also Optimum Tech., Inc.,* 496 F.3d at 1241 (11th Cir. 2007). Not every dispute about material facts is genuine. Colorable evidence or evidence not significantly probative does not create a genuine issue of fact. *See Anderson v. Liberty Lobby Inc*., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice. A trial, after all, is not an entitlement.  It exists to resolve what reasonable minds would recognize as real factual disputes." *Ross v. Communications Satellite Corp*., 759 F.2d 355,364 (4th Cir. 1985). "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Sibley*, 871 F.2d at 483 (Murnagan, C.J., concurring) (*quoting* Fed. R. Civ. P. 56 Advisory Comm. notes). The court is obligated to prevent factually unsupported claims and defenses from going to trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 2553 (1986); *accord Pure Gold, Inc*., 739 F.2d at 624.

**II. The Court should enter judgment against Plaintiff's trademark claims.**

  To prevail on its claim for trademark infringement, Plaintiff must prove that it has a protectable interest in the asserted mark and that BCAH's mark is likely to cause confusion among reasonably prudent purchasers.  Plaintiff claims that it owns trademark rights in the term "ale house" in connection with restaurants or, alternatively, that it owns a family of marks comprising the term "ale house" in combination with any geographic descriptor.  However, the term "ale house" is a generic term for an establishment that serves beer and ale.  Further, a generic term cannot serve as a surname for a "family of marks."   Thus, plaintiff cannot establish a protectable interest in either the name "ale house" or a family of ale house marks.

  Analyzing a likelihood of confusion between the marks ultimately boils down to a comparison between the geographic terms Carolina and Boynton.  These terms are completely dissimilar in sound, meaning, or appearance.  No reasonable jury could find a likelihood of confusion.  Therefore, the court

should grant summary judgment holding that Plaintiff has no protectable interest in the term "ale house" either alone or in combination with any geographic descriptor, and that the term "ale house" cannot serve as a basis for a family of marks.  Further, the court should grant summary judgment holding that there is no likelihood of confusion between CAROLINA ALE HOUSE and BOYNTON ALE HOUSE AND RAW BAR.

### A.  "Ale House" is Generic For An Establishment That Serves Beer and Ale.

 "A generic term can *never* become a trademark."  *Soweco, Inc. v. Shell Oil Co.,* 617 F.2d 1178, 1183 (5th Cir. 1980)[1] (*emphasis added*).  Neither Florida nor the Eleventh Circuit afford trademark protection to generic terms.  *See, e.g., Welding Serv., Inc. v. Forman,* 509 F.3d 1351, 1358 (11th Cir. 2007) ("Courts have generally held that a term used generically cannot be appropriated from the public domain; therefore, even if the name becomes in some degree associated with the source, a generic mark cannot achieve true secondary meaning."); *Great S. Bank v. First S. Bank,* 625 So.2d 463, 469 (Fla. 1993) ("Generic terms … cannot serve to identify the source of goods or services and thus are not protectable.").

"[T]he words 'ale house'…are generic words for a facility that serves beer and ale, with or without food, just as are other similar terms such as 'bar,' 'lounge,' 'pub,' 'saloon,' or 'tavern.'"  *Ale House Management, Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137, 141 (4th Cir. 2000).  Since the Fourth Circuit's ruling, nothing has changed.  The dictionary evidence before this Court also shows that the words "ale house" are still generic as used by these parties, and three of the entries are dated after the Fourth Circuit's holding.  [S*ee* D. 43] This Court previously recognized the genericness of "ale house", [*see* D.57, pp.18-19 (describing "ale house" as a "generic identifier")]  and the renowned linguist Dr. Ronald Butters has also explained at length the the term as used by Plaintiff is generic.  [Butters Rep. pp. 1-18.]  Outside this Court, even Plaintiff acknowledges that "ale house" is generic.  Plaintiff registered a number of state trademarks containing the phrase "ale house."  In each registration, Plaintiff consistently disclaimed "ale house."  *See* Excerpts from Thomson Trademark Search, attached hereto as Ex. A.

---

[1] The Fifth Circuit Court of Appeals was split into the new Fifth Circuit Court of Appeals and the Eleventh Circuit Court of Appeals on October 1, 1981.

Plaintiff cannot now turn around and claim rights in terms it explicitly disclaimed.

There is no question that "ale house" is generic and Plaintiff cannot claim trademark rights in these words.  This Court should grant summary judgment in favor of BCAH.

**B.   Plaintiff's Family Of Marks Claim Utterly Lacks Merit.**

*1. As a matter of law, a generic term may not function as a surname for a family of marks.*

"[T]he mere ownership of a number of marks sharing a common feature…is insufficient to establish a 'family' of marks."  *Hester Indus., Inc. v. Tyson Foods Inc.,* 2 U.S.P.Q.2d 1646, 1647 (T.T.A.B. 1987).   Instead, "application of the [family of marks] doctrine requires a showing that the family feature or 'surname' is distinctive."  *Spraying Sys. Co. v. Delavan, Inc.,* 975 F.2d 387, 395 (7th Cir. 1992); *see also The Land-O-Nod Co. v. Paulison,* 220U.S.P.Q. 61, 66 (T.T.A.B. 1983) (requiring "that the 'family' feature is distinctive (i.e. not descriptive…or so commonly used in the trade that it cannot function as the distinguishing feature of any party's mark.)"); *Truescents LLC v. Ride Skin Care LLC,* 81 U.S.P.Q.2d 1334, 1338 (T.T.A.B. 2006) (requiring a family surname to be distinctive); *Hester Indus.,* 2 U.S.P.Q.2d at 1647 ("a 'family' of marks cannot be acquired in…a term that has been so commonly used in the trade that it cannot function as the distinguishing feature of any one party's mark); *and Marion Lab., Inc. v. Biochemical/ Diagnostics, Inc.,* 6 U.S.P.Q.2d 1215 (T.T.A.B. 1988) ("[I]f the asserted family feature is descriptive or highly laudatory or commonly used in the trade it cannot serve as the basis for a family of marks.").  Thus, "[t]he common element of a family of marks can be suggestive, but not descriptive[2] or generic."  3 Callmann on Unfair Comp., Tr. & Mono. § 21:47 (4th Ed. 2009); *see e.g. Spraying Sys.,* 975 F.2d at 395 (the mark "jet" is "a common term that is descriptive" of spray nozzles and thus was not enough "to establish a protectable family of marks").

Plaintiff claims it has a "family of marks" with the sur-name "ale house."  [D.1, ¶ 4.]  As discussed, *supra,* "ale house" is generic when used for a restaurant that serves beer.  Because a generic term can never be distinctive, *see Welding Services,* 509 F.3d at 1358, Plaintiff cannot acquire a "family

---

[2] As in trademark law generally, descriptive surnames that acquire a strong secondary meaning may be afforded trademark protection.  *See Spraying Sys.,* 975 F.2d at 395.

of marks" where the surname for that family is the generic "ale house."

The Eleventh Circuit recognizes this limitation on a "family of marks." *See Bavaro Palace S.A. v. Vacation Tours, Inc.*, Case No. 04-20422-CIV-KING (Opinion and Final Judgment, D.E. #186, p.9), *aff'd in part* 203 Fed. Appx. 252 (11th Cir. 2006). In *Bavaro*, the plaintiff used the geographically descriptive "Bavaro" as a surname with changing generic terms for its "family of marks." *See Bavaro*, 203 Fed. Appx. at 255. The District Court found no protectable right in a "family of marks" due to lack of secondary meaning, stating that "[t]he combination of the geographic term, 'Bavaro,' with a generic term, 'palace,' will not save an otherwise geographically descriptive mark." *Bavaro*, 04-20422-CIV-KING (Opinion and Final Judgment, D.E. #186 at 9). The Eleventh Circuit affirmed, finding "there is no protectable interest in the asserted mark." *Bavaro*, 203 Fed. Appx. at 255.

This Court also recognized that Plaintiff cannot establish a family of marks right in the generic phrase "ale house" coupled with a geographically descriptive term. [*See* D.57, pp. 20-21.] Because "the sur-name consists of the weaker generic term 'ale house,' and it's the ever-changing geographic designation which is the strongest of the two terms, the case for lack of secondary meaning is even stronger [than in *Bavaro Palace*]." [D.57, p. 21.] Similarly, Dr. Butters found that the BOYNTON, JUPITER, GARDENS, BOCA, et al., terms in Plaintiff's trade names are mere geographical descriptors. [Butters Rep. pp. 19-21.] Plaintiff made no effort to rebut Dr. Butters' analysis.

Further, Plaintiff explicitly disclaimed "ale house" when it registered state trademarks for restaurants it now claims as part of its "family of marks." By disclaiming "ale house," Plaintiff demonstrated that these words are not distinctive, and, thus, not capable of being a sur-name under a "family of marks" theory. This disclaimer also demonstrates that Plaintiff claimed no rights in "ale house." Plaintiff cannot now turn around and claim rights in geographic modifiers coupled with "ale house" when it expressly disclaimed "ale house" in its registration of those same geographic modifiers coupled with "ale house." [*See* Ex. A.]

Plaintiff cannot show any protectable "family of marks" based on the generic surname "ale house." This Court should grant summary judgment in favor of BCAH on Plaintiff's trademark claims.

**2. The evidence undercuts any potential claim of a family of "ale house" marks.**

"Secondary meaning is the connection in the consumer's mind between the mark and the provider of the service.  Plaintiff has the burden of sustaining *a high degree of proof* in establishing…secondary meaning."  *Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.,* 931 F.2d 1519, 1525 (11th Cir. 1991) (emphasis added).  When determining whether a mark has acquired secondary meaning, courts consider several factors including the length of use of a mark and "the efforts made by the plaintiff to promote a conscious connection in the public's mind between the name and the plaintiff's product or business."  *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1513 (11th Cir. 1984).  Although Plaintiff has been using its "family of marks" for a considerable time, this Court appropriately found that Plaintiff's vast deficiencies in the other *Conagra* factors "weigh[ed] heavily against a finding of secondary meaning." [D.57, p. 24.]

There has been no effort on the part of Plaintiff to promote a connection between its "family of marks" and its business in the mind of the public.  As the facts clearly show – and this Court noted - Plaintiff uses "inconsistent and non-uniform signage, logos, and most importantly, non-uniform restaurant names, which, apart from the ever-changing insertion of geographic names such as Boynton, Miami, Pines, etc., are variously and inconsistently referred to as 'Ale House,' 'Raw Bar,' 'Ale House and Raw Bar,' and only sometimes prominently displayed with the family name of 'Miller's.'"  [D.57, p. 24.] Further, Plaintiff's mark is hardly constant.  For example, Plaintiff uses nomenclature where the name of the city is followed by "ale house and raw bar" or just "ale house," although other restaurants are just named "Miller's ale house."  [D.29-3, ¶ 30; D.57, p. 26.]  Because of Plaintiff's non-uniformity between its restaurants, "it would take a vast, far-reaching and extensive ad campaign to bring a sense of consistency and coherency to the mark such that it would create a link in the consumer's mind between the name 'Boynton Ale House' and the various other 'Ale House' restaurant[s] falling under the Miller's family umbrella."  *Id*.  Plaintiff has presented no evidence of such a campaign and, indeed, even testified that it rarely advertises its Florida locations as a collective.  [D.53, pp. 24-25.]

In an attempt to show secondary meaning, Plaintiff points to "confusion evidence."  At most, this evidence shows de minimus confusion.  Plaintiff's actual confusion evidence consists of a log book where Plaintiff's employees wrote about alleged instances of third party confusion.  Plaintiff admits that these self-serving litigation notes by its employees were not always made on the day the "confusion" allegedly occurred.  [D.57, pp. 36-37 & n.28.]  Beyond the fact such "evidence" is hearsay upon hearsay, several of the entries in the log book show something other than actual confusion.  For example, one entry in the log book describes a customer telling his friends that Plaintiff is not related to BCAH, while another entry relates a discussion among a party about how BCAH is not affiliated with Plaintiff.  [D.3, Ex. 12.]  Further, assuming Plaintiff served roughly the same number of people as BCAH, Plaintiff's incidents of confusion amount to, at best, 51 incidents out of a half million diners.  This is a few hundredths of a percentile and is de minimus.  Plaintiff has not produced any additional confusion evidence pursuant to its Rule 26(a)(1) obligations.

Plaintiff's evidence is insufficient to fulfill the high degree of proof necessary for secondary meaning.  Even if Plaintiff did have a descriptive (as opposed to generic) mark, Plaintiff cannot show that its mark has acquired distinction.

### C.  Even if Plaintiff Had a Protectable Interest, Which it Does Not, Plaintiff Cannot Show Likelihood of Confusion

Plaintiff cannot sustain a claim of trademark rights in the words "ale house", regardless of whether they are used in conjunction with a geographic descriptor.  Where there is no protectable trademark interest, there is no need to conduct an infringement analysis.  *American Television and Comm. Corp. v. American Comm. and Television, Inc.*, 810 F.2d 1546, 1550 (11th Cir. 1987); *accord Hunt Masters, Inc. v. Landry's Seafood Restaurant*, 240 F. 3d 251 (4th Cir. 2001); *American Cyanamid Corp. v. Connaught Labs, Inc.*, 800 F2d 306 (2nd Cir. 1986).  For this reason alone summary judgment should be granted in favor of BCAH.  Nonetheless, even if Plaintiff were to have some protectable trademark right, which it does not, it would be unable to show a likelihood of confusion.

In the Eleventh Circuit, courts weigh seven factors to determine whether there is a likelihood of

confusion: the type of mark, the similarity between the marks, the similarity of the goods or services offered under the mark, the similarity between the customers and channels of trade, the similarity between advertising media, the defendant's intent, and actual confusion evidence. *Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1239 (11th Cir. 2008). Most of these factors weigh in favor of BCAH.

As discussed in detail, *supra*, "ale house" is generic. Miller's "family of marks" with a changing geographic location coupled to the generic sur-name "ale house" is not protectable. At most, the mark is geographically descriptive, and weak at best. [*See also* D.57, p. 26.]

The similarity of the marks also weighs in favor of BCAH. This Court found that "[t]he Carolina Ale House name and logo are very different from that utilized by Miller's." [D.57, pp. 26-27.] BCAH uses the distinctive, federally registered Carolina Ale House logo. Although its technical legal name is "Boynton Carolina Ale House, LLC," BCAH does not use the word "Boynton" in any of its restaurant materials. The Court was entirely correct in rejecting Plaintiff's claim that a consumer is likely to confuse a restaurant located in Boynton Beach, Florida operating as "Boynton Ale House and Raw Bar" with a restaurant located in the same city operating under the tradename "Carolina Ale House."

Further, even if Plaintiff could legitimately claim rights in a family of ale house marks, none of its asserted marks include state names. To the contrary, each Miller's ale house that still uses a geographic descriptor coupled with "ale house," uses the local geographic descriptor, *e.g.* the Boynton Ale House and Raw Bar is in Boynton Beach. In contrast, BCAH's geographic descriptor CAROLINA is over 600 miles removed from Boynton Beach. A reasonable consumer is likely to notice that CAROLINA is not in, near, or in any way local to Boynton Beach.

The Court further found that BCAH did not intend to infringe on Plaintiff's trademark. [D.57, p. 31.] BCAH – and all LMR licensees – take numerous steps to make sure they have their own identities. LMR licensees all use the same look and feel, which was designed by Diane Makgill of 3D by D Designs LLC. Ms. Makgill designed the original Carolina Ale House décor in Raleigh and has never been inside a Miller's ale house. [D.29-33.] Further, BCAH views Miller's as an inferior restaurant chain; BCAH's

manager testified that he would never want his establishment to be mistakenly grouped together with Miller's restaurants.  [D.29-19, ¶ 10.]  This factor clearly favors BCAH.

The actual confusion factor also supports BCAH.  As discussed above, of the half million people served by BCAH and Plaintiff since BCAH opened, the only instances of confusion amounted to a few hundredths of a percentile and, at most, is de minimus.  Plaintiff also points to several items it claims cause confusion.  Not only are these not instances of actual confusion, none of the things noted by Plaintiff gives rise to unreasonable consumer confusion.

For example, Plaintiff alleges confusion exists because both Plaintiff and BCAH use the term "ale house" preceded by a geographic identifier.  [D.1, ¶ 18].  Using a geographic identifier as part of a name is not, itself, sufficient to establish confusion.  [D.57, p. 32.]  Further, "when [Miller's] causes the name [of its restaurants] to change depending upon its local situs it is creating its own confusion, a confusion that cannot be fairly laid at the feet of [BCAH]."  [D.57, p. 32.]

Plaintiff claims that the outside appearance of its restaurant and BCAH are confusingly similar. The two restaurants, however, are "noticeably different."  [D.57, p. 33.]  Miller's restaurant is a one-story facility that is at the end of a strip mall.  [D.29-19, ¶ 3; 29-20; 29-21; 29-34, ¶ 9.]  On the building, the word Boynton is in the center, with "ale house" to the left in smaller font and "raw bar" to the right in smaller font.  [D.29-20; D.57, p. 33.]  The "ale house" portion of Plaintiff's signage is partially blocked by a palm tree.  [D.29-20; D.57, p. 33.]  Plaintiff's establishment is "plain, with typical store front windows and a façade that blends in with the rest of the non-descript strip of stores."  [D.29-33, ¶ 9; D.57, p. 33.]  In contrast, BCAH's restaurant is a pink, free-standing structure with a tower over its entrance. [D.29-19; 29-22; 29-23; 29-34, ¶ 10; D.57, p.33.]  The words "Carolina Ale House" are proclaimed on both the front and side of the tower.  [D.29-22; D.29-23; D.57, p.33.]  This Court has already found "that even from a brief glance at the buildings in question, a reasonable consumer would have no trouble recognizing the independence of the restaurant chains and would not in any way be confused as to what if any affiliation the restaurants might share."  [D.57, pp. 33-34.]  Accordingly, there is no confusion arising from the outside appearance of the restaurants.

Plaintiff further claims that confusion arises from the menus of each restaurant.  [D.3, pp. 5-7.]  The evidence does not support this claim.  Plaintiff uses a simple, folded paper menu with the words "Miller's Ale House."  As the Court noted, Plaintiff does *not* use "Boynton Ale House," the name that appears on its outside signage, on its menus.  [D.57, n. 26.]  Plaintiff's menu features a fishing theme; the menu displays a picture of a fish and a fisherman with a pole, along with the phrase "A 'Reel' Great Place to Catch a Good Time."  [D.29-32; D.57, p. 34.]  BCAH's menu, in contrast, uses the same name as its signage – Carolina Ale House.  The front of BCAH's menu uses the distinctive, federally registered, Carolina Ale House logo, which is displayed with images of sports equipment.  [D.29-31; D.57.]  The menu itself is a laminated, metal tipped, faux leather tri fold menu.  [D.29-31.]  The menus portray "totally different" ideas.  [D.57, p. 34.]  Reasonable people would not be confused by the menus used by BCAH.  [*Id.*]

Also included in the "confusion" evidence is a claim that the uniforms worn by servers at Miller's ale houses and BCAH are similar.  Both restaurants use uniforms consisting of a dark colored polo shirt paired with khaki shorts, skirts, or slacks.  [D.3, p. 5; D. 57, p. 36.]  This uniform, however, is used by numerous restaurants in South Florida.  [D.57, p. 36.]  Because of the extensive third party use, there is "no likelihood of unreasonable consumer confusion resulting from the server's uniforms."  [D.57; p. 36.]

Finally, Plaintiff claims there is unreasonable confusion from the trade dress of the two restaurants.  As discussed above, the only similarities between the two restaurants are general features that "are not in any way unique or distinctive to Boynton Ale House or to any of Miller's other family of ale houses."  [D.57, p. 35.]  The restaurant with unique trade dress elements is BCAH, which has numerous distinctive, memorable, and unique trade dress elements – such as a red English telephone booth, mannequins representing a referee, police officer, scuba diver, and water-skier, custom made metal signs, murals and wood carvings, and funny quotes under the resin top of the bar.  None of the unique elements in BCAH are present in Plaintiff's restaurants.  [D.57, p. 35.]  As such, this Court found that there is no unreasonable confusion coming from the trade dress of the restaurants.

The only factors that favor Plaintiff are the similarity of the goods and services and the similarity of the customers and channels of trade.  This, alone, is not enough to find likelihood of confusion.

Because this "Court finds the clear and noticeable differences between the two restaurants are so numerous and so substantial that they serve to defeat the likelihood of unreasonable confusion as affects the consuming public," [*see* D.57, pp.31-32], Plaintiff cannot demonstrate a likelihood of confusion.  No reasonable juror could find for Plaintiff.  This Court should grant summary judgment in favor of BCAH.

**III. Plaintiff's Trade Dress Claims are (again) Frivolous and Should be Dismissed.**

To show a protectable trade dress right, a plaintiff must identify inherently distinctive elements or unique elements that consumers associate with only the plaintiff and must prove that those elements are non-functional. *HI L.P., v. Winghouse of Fla., Inc.*, 347 F.Supp.2d 1256, 1258 (M.D. Fla. 2004) (Plaintiff must prove: "1) its trade dress is inherently distinctive or has acquired secondary meaning, 2) its trade dress is primarily non-functional, and 3) the defendant's trade dress is confusingly similar.")  Trade dress is generic, and thus, unprotectable, if it is "a mere refinement of a commonly-adopted and well-known form of ornamentation, or a common basic shape or design."  *Ale House Mgmt.,* 205 F.3d at 142.

Plaintiff's complaint does not specifically articulate the elements encompassing its trade dress. [*See* D.1.]  From representations Plaintiff has made to this Court, it appears that Plaintiff defines its trade dress to include using red or red-with-yellow lettering for the phrase 'ale house,' using large type for 'ale house,' using 'ale house' on its menu, wait staff uniforms consisting of a dark polo top and khaki bottoms, a peninsula bar, an open kitchen, and its floor layout.  [D.3, p. 5.]  At other times, Plaintiff has further included using wood and brass as part of its décor to its trade dress claims.  [D.51, ¶ 19.]

There is nothing unique about this combination of elements.  Plaintiff raised trade dress claims in these same restaurants in its 1999 lawsuit against another LMR licensee.  In that case, the Eastern District of North Carolina found Plaintiff did not have a protectable trade dress right.  The Fourth Circuit affirmed, finding nothing unique or unusual in Plaintiff floor layout, location of the peninsula bar, or general wood and brass décor.  *See Ale House Mgmt.*, 205 F.3d at 142.

Nothing has changed since the Fourth Circuit's ruling.  Plaintiff's asserted "trade dress" remains

unprotectable.  Indeed, this Court reached the same conclusion as the Fourth Circuit, finding that "the elements alleged to make up [Miller's] trade dress, the restaurant's sports-related décor, menus, floor layout, logo, outside signage, servers' uniforms and colors, are to ordinary to be considered symbols of origin."  [D.57, 21.]  Essentially, this Court held that Plaintiff asserted trade dress is generic and unprotectable.  [D.57, 21- 22.]  Indeed, when discussing the elements Plaintiff is claiming as trade dress, this Court found that those features "are not in any way unique or distinctive to 'Boynton Ale House' or to any of Plaintiff's other 'family of ale houses.'"  [D.57, p. 35.]  Because Plaintiff's trade dress is generic and unprotectable, this Court should grant summary judgment in favor of BCAH.  Plaintiff has not produced any further evidence in support of its trade dress claims.

## IV. Plaintiff's Copyright Claims Still Lack Merit and should be Dismissed.

### A.  Legal Standard for Copyright Infringement.

A plaintiff establishes copyright infringement by providing evidence of (1) ownership of a valid copyright in the work at issue and (2) unauthorized copying of protected elements by the defendant.  *Feist Publ'ns, Inc. v. Rural Tel. Serv., Co.,* 499 U.S. 340, 361 (1991).  Proof of copying is shown by direct evidence, or by indirect evidence that the defendant had access to the copyrighted work and that there are substantial similarities between the allegedly infringing work and the copyrighted work.  *Mitek Holdings, Inc. v. Arce Eng'g Co., Inc.,* 89 F.3d 1548, 1544 (11th Cir. 1996); *see also* Meville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.01[B], 13-10 (2003) ("Nimmer").

### B.  There's No Evidence of Access to the Floor Plans.

The element of access is generally understood to require a showing of an opportunity to copy.  *Corwin  v. Walt Disney Co.,* 475 F.3d 1239, 1253 (11th Cir. 2007).  To establish access, a plaintiff must show either that the allegedly infringed work was widely disseminated or that a particular chain of events occurred through which the accused infringer gained access.  Nimmer § 13.02[A].  Plaintiff cannot demonstrate access via either of these methods.

Plaintiff alleges that BCAH had access to its Floor Plan No. 5 because (1) the floor plan was registered with the U.S. Copyright Office and (2) Plaintiff uses the floor plan in its restaurant(s) in

Florida.  [D.1, ¶ 38.]  Neither shows widespread dissemination.  First and foremost, Plaintiff cannot show access through the U.S. Copyright Office because "[t]he Copyright Office will not honor a request for a copy of someone else's protected work without written authorization from the copyright owner."[3]  Indeed, BCAH did not have access through the U.S. Copyright Office.  Similarly, Plaintiff cannot show widespread dissemination by the fact that it uses its floor plans in its restaurant(s).  Plaintiff only identifies one restaurant – The Brandon Ale House – that uses Floor Plan No. 5.  One restaurant is hardly wide dissemination.  Plaintiff has forecast no evidence that BCAH has accessed its works.

Nor can Plaintiff show a particular chain of events through which the accused infringer gained access.  BCAH licenses its floor plan from LMR.  [D.33, ¶ 4.]  That plan is based on the original RAHI floor plan designed by John Duranko.  [Duranko Aff., ¶ 7.]  Mr. Duranko testified that he has *never* been inside the Brandon Ale House.  [*Id*. at ¶ 8.]  Plaintiff cannot show access.  Summary judgment in favor of BCAH is appropriate.

### C.  The Protectable Elements are not Substantial Similarity.

"[C]opyright protection does not extend to ideas but only to particular expression of ideas." *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1224 (11th Cir. 2008).  The substantial similarity element is determined by use of the ordinary observer test:  whether "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work."  *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.,* 684 F.2d 821, 829 (11th Cir. 1982).  When comparing the designs as an ordinary observer, the respective designs speak for themselves.  *See Lyons Partnership, L.P. v. Morris Costumes, Inc.,* 243 F.3d 789, 801 (4th Cir. 2001); *accord* Nimmer § 13.03[E][1], 13-80, n.200 and text.  Although some general similarities may exist between two designs, if there are significant differences at the level of protected expression, substantial similarity does not exist.  *Oravec,* 527 F.3d at 1227 *citing Ale House Mgmt.,* 205 F.3d at 143 (cited for concept that the general idea of "an island or peninsula-shaped bar to based a seating area which has booths on one side and stool seating on the other"

---

[3] *See* "Can I Use Someone Else's Work?  Can Someone Else Use Mine?" *available at* http://www.copyright.gov/help/faq/faq-fairuse.html.

is unprotectable because "at this level of generality, [plaintiff's] design is nothing more than a concept."). Summary judgment in favor of the defendant should be entered where "there may be substantial similarity with respect to the non-copyrightable elements of the two works compared; and … as to the protectable elements, there is substantial dissimilarity."  *Intervest Constr. Inc. v. Canterbury Estate Homes*, *Inc.*, 554 F.3d 914, 920 (11th Circ. 2008); *accord Oravec*, 527 F.3d at 1223-1228.

The only elements the BCAH floor plan has in common with Plaintiff's Floor Plan No. 5 are unprotectable concepts, *e.g.* a central bar with table seating to one side and booth seating to the other. Even these elements are not copied from Plaintiff; instead, the floor plan of BCAH is based upon the original RAHI plan, which also features a central bar flanked by booths and pool tables.  This layout is hardly unique or new to Plaintiff.  John Duranko, who designed the floor plan of RAHI, testifies that he had never been inside the Brandon Ale House, Plaintiff's restaurant that uses Floor Plan No. 5.  [Duranko Aff., ¶ 8.]  Mr. Duranko further testifies that there is nothing unique or original about a central bar flanked by high top tables on one side and booths on the other; a number of restaurants had been using this arrangement long before Plaintiff came into existence.  [*Id*. at ¶¶ 5, 6.]  Those variations that exist between the RAHI plan and the BCAH plan are due to the BCAH location being a former Tony Roma's. Indeed, the "backside" of BCAH from the restrooms to the "existing walk in freezer" and "existing walk in cooler" are unchanged from the original Tony Roma's design.[4]

Filtering out the general concepts and focusing on the particulars of the plans, a comparison between the BCAH floor plan and Plaintiff's Floor Plan No. 5 demonstrates that the plans are entirely different.  The size and proportion of the seating areas differ between the two plans.  The locations of tables, booths, pool tables, and bar(s), within those seating areas are also entirely dissimilar.  In all the designs at issue, spacing and the footprints of the buildings dictate table placement, necessitating a different arrangement of booths and tables.  On the protectable level, the differences between the designs are significant, so much so that no reasonable jury could find substantial similarity.  *See Oravec*, 527 F.3d at 1227.  Indeed, this Court already found that "the dissimilarities between the layout…of the respective

---

[4] *See* Duranko Aff., Ex. A for a copy of the original Tony Roma plan.

restaurants" are "numerous and substantial." [D.57, p. 36.] As such, there can be no substantial similarity between the BCAH floor plan and Floor Plan No. 5. This Court should grant summary judgment in favor of BCAH.

**V.  There is no evidence of unfair trade practices.**

Plaintiff also argues that BCAH has engaged in unfair trade practices. Plaintiff asserts causes of action for unfair trade practices pursuant to the Lanham Act and pursuant to Florida common law. A false advertising claim requires, *inter alia*, a false or misleading description or representation of fact in commercial advertising or promotion. To prevail on an unfair competition claim under Florida common law, Plaintiff must establish deceptive or fraudulent conduct of a competitor and likelihood of consumer confusion. *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1493 -1494 (11th Cir. 1990).

Plaintiff complains of various trade practices of BCAH. Specifically, Plaintiff takes issue with the "Palm Beach County locations" coupons, with BCAH offering "kids eat free" discounts on Tuesday nights (the same night as Plaintiff), and with BCAH locating its restaurant 1.5 miles away from the Boynton Ale House and Raw Bar. Plaintiff argues that these acts when done in conjunction with BCAH's décor, floor layout, and CAROLINA ALE HOUSE brand constitute unfair trade practices. As this Court correctly deduced, there is simply no merit in these contentions.

"[T]here is nothing deceptive or fraudulent about offering a 'kids eat free' discount on the same night as one's competitor, nor is it deceptive or fraudulent to open an establishment in relatively close proximity to a competitor." [D.57, p. 44.] Ultimately, "[t]hese acts constitute legal and fair means of competition, and cannot form the basis of either an unfair trade practices or unfair competition claim." [*Id*.] To the extent Plaintiff's unfair competition and false advertising claims are dependent on BCAH's "legal and fair means of competition," Plaintiff's claims must fail.

Similarly, this Court found that there was and is nothing deceptive about the referenced coupon. The coupon clearly provides the street addresses of the CAROLINA ALE HOUSE restaurants and makes prominent use of the federally registered trademark. The dominant visual element on the coupon is LMR's federally registered CAROLINA ALE HOUSE logo trademark. The reference to "Palm Beach

area locations" is fair since there are CAROLINA ALE HOUSE restaurants in the Palm Beach area, specifically in Boynton Beach and Weston, and the coupon sheet includes their street addresses and phone numbers. The only conclusion that can be reached when viewing these coupons – and indeed, the conclusion this Court reached – is that "the face of the coupons themselves and a recognition of the context in which they were presented make clear that no confusion was intended." [D.57, pp. 43-44.]

Finally, Plaintiff's argument that these legal activities constitute an unfair trade practice when coupled with use of "ale house" and Plaintiff's trade dress claims also lacks merit. As discussed above, Plaintiff has proven no protectable rights in the words "ale house" used in conjunction with its restaurants nor in any trade dress elements. Where a claimant's assertions of infringement are rejected, the corresponding state law claims often fail as well. *See Winghouse of Flor.*, 347 F. Supp. 2d at 1259 (entering judgment against state claims where copied restaurant elements were not protectable). There is simply no support for Plaintiff claims of unfair competition or false advertising.

## VI. Collateral Estoppel Precludes Plaintiff From Re-litigating These Claims

"The principle [of collateral estoppel] is simply that later courts should honor the first actual decision of a matter that has been actually litigated." Wright & Miller § 4416. Accordingly, "a Rule 56 motion will be granted on the basis of former adjudication when an earlier summary judgment has disposed of the same issues between sufficiently related parties." Wright & Miller § 2736. Plaintiff comes before this Court asserting the same rights that the EDNC Court ruled do not exist on summary judgment. The Fourth Circuit affirmed that ruling. Plaintiff should be collaterally estopped from asserting it has trademark rights in the words "ale house," that its chain of ale houses have a protectable trade dress, or that its myriad floor plans give it a general copyright interest in a restaurant with a center-island bar surrounded by tables and pool tables.

> Collateral estoppel, or "issue preclusion," applies when a judgment "[forecloses] relitigation of a matter that has been litigated and decided." *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)(alteration in original). "Once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue ..." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).

*Callasso v. Morton & Co.*, 324 F. Supp.2d 1320, 1324 (S.D. Fla. 2004). The law of preclusion does not

allow for "a second bite at the apple" and does not permit second-guessing the correctness of the earlier judgment. *Agripost, LLC v. Miami-Dade County,* 525 F.3d 1049, 1056 (11th Cir. 2008).[5]

Plaintiff asserts federal trademark rights in the words "ale house" used in conjunction with its restaurants and in its "family" of "ale house marks." [D.1, ¶¶ 4, 9 & COUNT I & II.] Plaintiff asserted and lost the same claims before the EDNC Court. [*See* D.31-2, ¶¶ 11, 14, 17 (asserting rights in "ale house" and in the trade names of twenty ale house restaurants, to include the Boynton Ale House, and in its alleged "Family of Marks").] Both that court and the Fourth Circuit judged that no such rights exist. *See Ale House Mngmt,* 205 F.3d at 141 ("AHM has no protectable interest in the words 'ale house.'").

Once a mark is held generic, it cannot be resurrected absent the most extraordinary and rare circumstances. *See Miller Brewing Co. v. Schlitz Brewing Co.*, 605 F.2d 990 (7th Cir. 1979) (Plaintiff precluded from asserting trademark rights in LITE after prior litigation).

> Only in an extraordinarily rare case could a name once recognized in the past as a generic name be raised from the public domain to become a trademark by a change in consumer usage over a significant period of time. It is hard to think of even hypothetical examples, for they must be old terms which are generally unknown in current usage.

J. Thomas McCarthy, 2 McCarthy on Trademarks and Unfair Competition § 12:11 (4th ed. 2009). Nothing has changed since the Fourth Circuit ruled "ale house" to be generic. Plaintiff should be precluded from pursuing a second bite at its "ale house" apple. This Court should hold Plaintiff is precluded from re-litigating the genericness of "ale house" and enter judgment in favor of BCAH.

Plaintiff also asserts trade dress rights in the floor plan of its ale houses and in the décor and related attributes of its chain. [D.1, ¶ 11.] Plaintiff falsely claims that BCAH uses the "look and feel" of Miller's ale houses and charges BCAH with trade dress infringement under the Lanham Act. [*Id.* at ¶ 27 & COUNT III.] RAHI and BCAH use the same "trade dress." Plaintiff simply asserts the same trade dress rights that it claimed it possessed in 1998. [*See* D.31-2, ¶¶ 10, 14.] Indeed, Plaintiff's BOYNTON

---

[5] A party to a second suit who was not named in the first is nonetheless considered among "the same parties" to the prior suit if there is a "pre-existing substantive legal relationship…between the person to be bound and the party to the judgment, such as the relationships between preceding and succeeding owners of property,…and assignee and assignor." *Lexington Ins. Co. v. Thrasher Eng'g, Inc.,* 2008 WL 4525014 (N.D.W. Va. 2008). Plaintiff is the successor in interest to AHM.

ALE HOUSE AND RAW BAR was one of the ale houses in which Defendant claimed rights in the earlier suit.  [*Id.* at ¶ 14.]

The EDNC Court held that there was nothing unique, unusual, or unexpected about Plaintiff's trade dress and that it had failed to establish any protectable trade dress right in its ale houses.  [D.31-12 (order adopting RAHI briefs); D.31-9, pp. 7-8.]  The Fourth Circuit agreed and held that Plaintiff failed to establish any trade dress rights in the appearance and service it employs in the interior of its ale houses. *Ale House Mngmt.*, 205 F.3d at 142.  Despite such a clear and unambiguous ruling, Plaintiff again claims the existence of federal trade dress rights in the same unremarkable attributes of the same restaurants. Plaintiff is bound by the EDNC Court's earlier judgment rejecting the existence of such rights.  This Court should hold that Plaintiff is collaterally estopped from re-litigating these trade dress claims and enter summary judgment in favor of BCAH.

In the prior suit before the EDNC Court, Plaintiff also asserted a copyright claim against RAHI based on a series of floor plans for various ale houses operated by Plaintiff.  The floor plans were all derivatives of Plaintiff's Jupiter Ale House floor design, which was a simple drawing that Mr. Miller drew by hand in 1988.  [*See* D.31-2, ¶ 40; D.31-3, pp. 1-3.] Plaintiff's other plans are derivatives of the Jupiter drawing, modified to fit different building footprints [*See* D.31-3.]  They also feature a central bar flanked by booths and pool tables.  RAHI's floor plan also features a central bar flanked by booths and pool tables.

The EDNC Court granted summary judgment on Plaintiff's copyright claim.  On appeal, in reviewing Defendant's plans, the Fourth Circuit observed that each of Plaintiff's drawings varied on the locations of the seating areas and the pool tables.  The Fourth Circuit held that Plaintiff's collection of plans, at best, encompassed an idea or concept, which is not copyrightable.  *Ale House Mngnt.,* 205 F.3d at 143.  When reviewing the RAHI floor plan to Plaintiff's specific floor plan that was closest in similarity, the Fourth Circuit held that the dissimilarities in the dimensions, the seating areas, and the placement of the pool tables were too great to sustain a claim for infringement.  The Fourth Circuit also held that Plaintiff failed to prove copying.  *Id.* at 143-44.

In reliance upon the Fourth Circuit's holding, LMR continued to license and operate ale houses with the same or substantially similar floor designs as that used in RAHI.  The BCAH restaurant is a recently converted Tony Roma's facility.  As can be seen, the RAHI and BCAH floor plans share the same basic design: a central bar flanked by as many tables and pool tables as space will allow with the kitchen, administrative and rest facilities in the back.  At the front side of its floor design, BCAH constructed a towering vestibule and a prominent outdoor patio/dining area with bar.  The "backside" of the BCAH ale house from the restrooms to the "existing walk in freezer" and "existing walk in cooler" are unchanged from the original Tony Roma's design.[6]

Plaintiff now asserts the exact same floor plans against BCAH.  [*compare* D.1, ¶ 16 *and* D.3, pp. 122-126 *with* D.31-2, ¶ 45; D.31-3.]  As in the earlier lawsuit, the only elements the BCAH plan has in common with any of the Plaintiff's floor plans are unprotectable concepts.  Filtering out the general concepts and focusing on the particulars, the plans are entirely dissimilar.  The locations of tables, booths, pool tables, and bar as well as all the dimensions are entirely different.  In all the designs at issue, spacing restrictions dictate table placement.  The spacing confines are governed by the basic footprint of the building.  Plaintiff is pursuing the same copyright theory that the Fourth Circuit emphatically rejected. This Court should hold that Plaintiff is precluded from re-litigating these copyright claims and enter summary judgment in favor of BCAH.

**VII. CONCLUSION**

In light of the foregoing arguments and precedent, this Court should grant summary judgment in favor of BCAH.

---

[6] *See* Duranko Aff., Ex. A.

Respectfully submitted, this the 14th day of May, 2010.

**Attorneys for Defendant Boynton Carolina Ale House LLC**

By: */s/Anthony J. Biller*
   N.C. State Bar No.: 24,117
   E-mail: abiller@coatsandbennett.com
   COATS & BENNETT, PLLC
   1400 Crescent Green, Suite 300
   Cary, North Carolina 27518
   Telephone: (919) 854-1844
   Facsimile: (919) 854-2084
   Of Counsel

By: */s/ Jeffrey L. Hochman*
   JEFFREY L. HOCHMAN
   Florida Bar No.: 902098
   E-mail: Hochman@jamgb.com

   JOHNSON, ANSELMO, MURDOCH, BURKE,
     PIPER & HOCHMAN, P.A.
   2455 E. Sunrise Blvd., 10th Floor
   Fort Lauderdale, FL 33304
   Telephone: (954) 463-0100
   Facsimile: (954) 463-2444

20

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 14th day of May 2010, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

    */s/ Jeffrey L. Hochman*
JEFFREY L. HOCHMAN
Florida Bar No.: 902098
HUDSON C. GILL
Florida Bar No. 15274
JOHNSON, ANSELMO, MURDOCH,
BURKE, PIPER & HOCHMAN, P.A.
2455 E. Sunrise Blvd., 10th Floor
Fort Lauderdale, FL 33304
Telephone: (954) 463-0100
Facsimile:  (954) 463-2444
Attorneys for BOYNTON CAROLINA ALE HOUSE, LLC

## SERVICE LIST

**Miller's Ale House, Inc., v. Boynton Carolina Ale House, LLC**
**Case No.:  09-80918-CIV-MARRA-J**
**United States District Court, Southern District of Florida**

<table>
<tr>
<td valign="top">

**PLANTIFF'S ATTNY:**
Mr. Wesley A. Lauer
E-Mail:  wesley.lauer@akerman.com
Akerman Senterfitt
222 Lakeview Avenue
4th Floor Esperante Building
West Palm Beach, FL 33401-6147
Telephone: (561) 671-3664
Facsimile:  (561) 659-6313

**Co-Counsel for Plaintiffs:**
Mr. J. Rodman Steele, Jr.
E-Mail:  rodman.steele@novakdruce.com
Mr. Jerold I. Schneider
Email:  jerod.schneider@novakdruce.com
Novek Druce & Quigg, LLP
City Place Tower
525 Okeechobee, 15th Floor
West Palm Beach, FL 33401
Telephone:  561-838-5229
Facsimile:   561-838-5578

</td>
<td valign="top">

**DEFENDANT'S ATTY:**
 Anthony J. Biller, Esq.
 N.C. State Bar No.: 24,117
 E-mail:  abiller@coatsandbennett.com
 COATS & BENNETT, PLLC
 1400 Crescent Green, Suite 300
 Cary, North Carolina 27518
 Telephone: (919) 854-1844
 Facsimile: (919) 854-2084

**Co-Counsel for Defendant:**
 Jeffrey L. Hochman, Esq.
 E-mail:  Hochman@jamgb.com
 Hudson C. Gill, Esq.
 E-mail:  hgill@jamgb.com
 JOHNSON, ANSELMO, MURDOCH,   BURKE,
 PIPER & HOCHMAN, P.A.
 2455 E. Sunrise Blvd., 10th Floor
 Fort Lauderdale, FL 33304
 Telephone: (954) 463-0100
 Facsimile:  (954) 463-2444

</td>
</tr>
</table>