IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
09-80918-CIV-MARRA/JOHNSON

| | |
|---|---|
| MILLER'S ALE HOUSE, INC., )<br> )<br>   Plaintiff, )<br> )<br>v. )<br> )<br>BOYNTON CAROLINA ALE )<br>HOUSE, LLC, )<br> )<br>   Defendant. ) | **STATEMENT OF FACTS IN SUPPORT OF<br>MOTION FOR SUMMARY JUDGMENT** |

For over a decade, Plaintiff Miller's Ale House, Inc. and its predecessors in interest have pursued meritless lawsuits against licensees of LM Restaurants, Inc. ("LMR"), claiming trademark interests in generic phrases, trade dress rights in common and basic restaurant elements, and copyrights in general ideas.[1]  *See e.g. Ale House Management, Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137, 141 (4th Cir. 2000) ('ale house' held generic).  Boynton Carolina Ale House ("BCAH"), a licensee of LMR, is Plaintiff latest victim.  Because any reasonable juror would agree that Plaintiff latest litigation against another LMR licensee lacks merit, BCAH respectfully moves this Court for summary judgment.  Pursuant to Local Rule 7.5C, BCAH submits this Statement of Material Facts in support of its motion.

   **A. History**

In 1988, John Miller, a resident of the state of Florida, opened an ale house with a sport fishing theme that developed into a small chain in Florida. [D.1, ¶ 4; D.29-3, ¶ 7.]  Each ale house was named after the city in which it is located followed by the phrase "ale house and raw bar." [D.1, ¶ 4; D.29-3, ¶ 7.]  Thus, the Jupiter, Florida ale house was called "Jupiter Ale House

---

[1] *See* D.34 at 2-4 for a more detailed review of these prior lawsuits.

and Raw Bar." [D.1, ¶ 4; D.29-3, ¶ 7.] This chain eventually became "Miller's Ale House,"[2] which operates forty-two bar restaurants located in the states of Florida, Georgia, Illinois, Pennsylvania, and New York.[3] Plaintiff serves beer and ale at its bar restaurants and includes the words "ale house" in the trade name of each restaurant, often following the same naming nomenclature as the Jupiter establishment, *i.e.* the name of the city of operation followed by the words "ale house and raw bar." [D.1, ¶ 4; D.29-3, ¶ 7; D.29-32.][4] Amongst those, Plaintiff operates a restaurant in Boynton Beach as the BOYNTON ALE HOUSE AND RAW BAR. [*See* D.1 ¶ 4; D.29-20; 29-30; 29-32.]

BCAH is a licensee of LMR, a restaurant management company located in Raleigh, North Carolina. [D.29-3, ¶ 22; Moshakos Aff., ¶ 2.] In approximately 1998, LMR licensed Raleigh Ale House, Inc. ("RAHI") to open what would ultimately be the first CAROLINA ALE HOUSE in a converted restaurant building in Raleigh, North Carolina. [D.29-3, ¶ 9; Moshakos Aff., ¶ 4.] LMR designed the CAROLINA ALE HOUSE brand, décor, and floor design, and owns U.S. Service Mark Registration No. 3,038,753 for the CAROLINA ALE HOUSE stylized logo used in conjunction with restaurant and sports bar services. [D.3, Ex. 7; D.29-3, ¶¶ 16, 28; Moshakos Aff., ¶¶ 2-3.]

LMR manages and/or licenses eleven CAROLINA ALE HOUSE restaurants in North Carolina, South Carolina, and Florida, to include RAHI and BCAH. [D.3, Ex. 7; D.29-3, ¶¶ 16, 28; Moshakos Aff., ¶¶ 2-3.] Each of the CAROLINA ALE HOUSES shares the same mark, décor (to include "look and feel," menus, advertisements, uniforms, etc.), and general floor design. [D.33, ¶ 4; Moshakos Aff., ¶¶ 2-3.] The Carolina Ale House licensees all use the

---

[2] In the mid-1990s, Mr. Miller assigned his businesses to Ale House Management, Inc. In 2004, Ale House Management, Inc. assigned its assets to Miller's.
[3] At least for the Florida Miller's locations, however, the Miller's Ale House restaurants rarely advertise as a group. [D.53, p. 25.]
[4] Some of Miller's restaurants also carry the name "Miller's Ale House." [D29-3, ¶ 20; D.29-32.]

registered CAROLINA ALE HOUSE logo and all share the same webpage, www.carolinaalehouse.com.  [Moshakos Aff., ¶ 3.]  As they are ale houses, each Carolina Ale House offers approximately 40 different beers and ales, as well as quality food in a fun, sports bar atmosphere.  [*Id*. at ¶ 11.]

In March 1998, Plaintiff's predecessor in interest, Ale House Management ("AHM"), sued RAHI alleging trademark, trade dress, and copyright infringement, as well as unfair trade practices, in *Ale House Management Inc v. Raleigh Ale House, Inc, et al,* 5:98-cv-247-F(2) (E.D.N.C.).  AHM's claims were based on the claims that RAHI's use of the words "ale house" infringed AHM's alleged trademark rights in the name, that RAHI had misappropriated AHM's trade dress, and that RAHI had infringed AHM's copyright in its restaurant floor plans.  [D.31-2; Moshakos Aff., ¶ 5.]  RAHI promptly moved to dismiss and for summary judgment arguing, *inter alia,* that the term "ale house" as used by AHM and RAHI was a generic term for a restaurant facility that serves beer or ale and that AHM had no protectable "trade dress" or copyright interests.  [D.31-4; D.31-5; D.31-6; D.31-9; D.31-11; Moshakos Aff., ¶ 5.]  The E.D.N.C. granted RAHI's motion, expressly adopted RAHI's arguments, and entered judgment against AHM's claims.  [D.31-12; Moshakos Aff., ¶ 6.]  In affirming, the Fourth Circuit held that the term "ale house" as used by the parties is generic and not entitled to trademark protection. *Ale House Mngmt., Inc,* 205 F.3d at 141.

In reliance on the Fourth Circuit's ruling, LMR continued to license CAROLINA ALE HOUSE restaurants in North Carolina, South Carolina, and Florida.  [Moshakos Aff., ¶ 7.]  In early 2005, LMR licensed a CAROLINA ALE HOUSE restaurant in Weston, Florida.  [D.33, ¶ 2; Moshakos Aff., ¶ 10.]  The CAROLINA ALE HOUSE in Weston competes directly with two other Miller's locations, and uses the same mark, décor, and floor layout as RAHI and BCAH.

3

[D.33, ¶ 5; Moshakos Aff., ¶ 10.]  Plaintiff said nothing.  [D.33, ¶ 5; Moshakos Aff., ¶ 10.]

In April 2008, LMR licensed BCAH to commence operations in Boynton, essentially the same trade area as the restaurant in Weston.  [D.33, ¶ 5; Moshakos Aff., ¶ 11.] BCAH serves beer and its layout is basically the same as RAHI's, with variations based on the fact the BCAH is a converted TONY ROMA'S restaurant.  [D.29-3 ¶ 23; D.33; Moshakos Aff., 11; Duranko Aff., ¶ 7.]  BCAH features popular local sports teams, televisions, and a restaurant organized around a central bar, the same themes as RAHI.  [D.29-3 ¶ 23; D.33; Moshakos Aff., ¶ 11; Duranko Aff., ¶ 7.]

Plaintiff and BCAH are not the only ale houses in Palm Beach County.  Jay Preefer also operates, or has licensees that operate, restaurants and bar establishments throughout Florida including operating under names which include the term "Ale House." *Miller v. Preefer*, 1 So. 3d 1278 (Fla. App 4 Dist. 2009).  Mr. Preefer operates the PALM BEACH ALE HOUSE & RAW BAR, which is located approximately three miles from the West Palm Beach federal courthouse.  Its front signage says only ALE HOUSE & RAW BAR.  *See* www.palmbeachalehouse.com (copy of printout from website attached hereto as Exhibit A).[5]

On December 8, 2008, Plaintiff filed suit against BCAH in the state court for Palm Beach County, Florida, alleging trademark infringement, trade dress infringement, and unfair competition.  *See Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC d/b/a Carolina Ale House*, Case No. 50 2008-CA-038376 XXXX MB (15th Judicial Circuit 2008).  Despite the

---

[5] In a remarkable display of legal chutzpah, at the same time Miller's was suing BCAH to stop it from using the words "ale house" in Palm Beach County, Miller's used the same attorneys to sue the Palm Beach Ale House for the right to move closer to the PALM BEACH ALE HOUSE & RAW BAR locations in Palm Beach County.  Apparently, many years ago, Miller's entered into an agreement with the Palm Beach chain of ale houses; part of the agreement entailed dividing up Palm Beach County.  Miller's sued the PALM BEACH ALE HOUSE & RAW BAR in an effort to have that portion of the agreement declared void and unenforceable.  Miller's lost that case as well as the court made Miller's keep its promise.  *See Miller v. Preefer*, 1 So. 3d 1278 (Fla. App 4 Dist. 2009).

Case 9:09-cv-80918-KAM   Document 72   Entered on FLSD Docket 05/14/2010   Page 5 of 12

clear ruling of the Fourth Circuit, Plaintiff's trademark causes of action were based upon its claim of trademark rights in the words "ale house." *Id.*

In April 2009, BCAH moved the Palm Beach County Court to dismiss Plaintiff's claims. Without explanation, and a few days before the motion was to be heard, Plaintiff dismissed its state court lawsuit. Plaintiff then initiated this lawsuit, moved for a preliminary injunction, and served an employee at BCAH without providing any notice to BCAH's attorneys. Plaintiff again claims trademark rights in the words "ale house," particularly when coupled with a geographic modifier, and claims it has trademark rights in a "family of marks" consisting of a geographic modifier coupled with the phrase "ale house." [D.1.] Plaintiff also asserted trade dress rights in its bar restaurants, but failed to identify any unique or unusual elements of its restaurants that would be distinctive to consumers. [*Id.*]

### B. LMR acts diligently to ensure its CAROLINA ALE HOUSES maintain an independent identity in Florida.

Neither LMR nor BCAH have proceeded unfairly or deceptively in Florida or otherwise. They are not misleading customers. Entirely to the contrary, they proceed reasonably and diligently to maintain their own independent and unique CAROLINA ALE HOUSE market identity. [D.29-3, ¶¶ 28, 29; 29-19, ¶ 10.] Indeed, BCAH and Plaintiff use different appearances and themes for their ale houses.

Striking differences between the two ale houses are immediately apparent. As shown in the pictures attached to the Affidavit of Joe Marouf, the manager of the CAROLINA ALE HOUSE in Boynton, the CAROLINA ALE HOUSE prominently displays its name and logo on a tower above the restaurant. [D.29-22; D.29-23.] The restaurant itself is a pink and bright pink, stand-alone building with the company logo on the front awning as well as on the restaurant tower [D.29-19; 29-22; 29-23; 29-34, ¶ 10.] In comparison, the Plaintiff's ale house is part of a

5

strip mall with non-formatted, non-logo signage. [D.29-20; D.29-21.] Plaintiff's trade name in Boynton is and has always been "Boynton Ale House and Raw Bar." [*See* D.1, Ex. 3.] The foremost and dominant portion of Plaintiff's signage simply says "Boynton." [D.29-20; D.29-21.] Behind and to the left of "Boynton" are the words "Ale House" and behind and to the right are the words "Raw Bar." [D.29-20; D.29-21.] The "Ale House" portion of the Plaintiff's signage is almost entirely obscured by a palm tree. [D.29-20.] If one were looking for the Plaintiff's Ale House in Boynton, one would have difficulty finding the restaurant based on the signage. The restaurant facade is nondescript, and uses utilitarian and typical store front windows to blend into the strip mall. [D.29-19, ¶ 3; 29-20; 29-21; 29-34, ¶ 9.] Further, although Plaintiff's "Boynton Ale House and Raw Bar" is located entirely on Gateway Avenue, at the end of a strip mall, Plaintiff advertises itself as being on Congress Avenue, apparently the street mailing address for the mall. [D.52, ¶ 27; D.53, p. 35.] That strip mall extends to Congress Avenue, approximately a block away. [D.52, ¶ 27; D.29-18.] Plaintiff's regional manager even testified at the preliminary injunction hearing that Plaintiff's storefront cannot be seen from Congress Avenue. [D.53, pp. 21-22.]

The entrances to both restaurants also have clearly different looks. The entrance to the Plaintiff's ale house features two wooden doors with brass fixtures and portal-hole style tinted windows. [D.29-24.] The doors are set in the plain store front windows. [D.29-20; D.29-21; D.29-24.] Above the doors is a lighted sign stating BOYNTON ALE HOUSE. [D.29-19; 29-20; 29-21; 29-24.] The exterior of the CAROLINA ALE HOUSE in Boynton features an outside bar and restaurant area under a tiled roof. [D.29-22; D.29-23.] A red canvas awning protrudes from the tower entrance of the CAROLINA ALE HOUSE. [D.29-22; D.29-23.] The awning displays the CAROLINA ALE HOUSE brand. [D.29-22; D.29-23.] The inside of the tower features a

large 360º painted mural that extends approximately twenty-five feet above the ground. [D.29-34, ¶ 10.] From the tower foyer, guests enter through a brick archway and past a red British telephone booth. [D.29-19; 29-22; 29-23; 29-25; 29-34, ¶ 10.] There are no such features in the Plaintiff's ale house.

       The interiors of the respective restaurants are also strikingly different. The Plaintiff's ale house features fiberglass suspended ceilings with recessed lighting and, in some areas, hanging, brass lantern lamps above tables. [D.29-26.] Plaintiff uses brass railings and prominently displays hard alcohol at the center of the bar. [D.29-19, ¶ 5; D.29-26.] Despite being an "ale house," Plaintiff has no beer taps behind its bar, but instead places them along a side wall. [D.29-19, ¶ 5; 29-26; 29-27.] In contrast, the CAROLINA ALE HOUSE features an open warehouse style atmosphere, with an open ceiling and industrial lamps. [D.29-19, ¶ 15; D.29-19.] CAROLINA ALE HOUSE uses bricks and hardwood throughout and prominently displays its beer taps behind the bar. [D.29-19, ¶ 15; D.29-19.] Liquor is placed under the bar and out of sight. [D.29-19, ¶ 15; D.29-19.] The CAROLINA ALE HOUSE contains numerous unique design elements, including a red British telephone booth, adorned mannequins, murals, wood carvings, and a substantial number of funny signs and wall hangings. [D.29-19; 29-28; 29-24; 29-34, ¶¶ 3, 6.]

       Once seated, guests at each restaurant are presented with entirely different menus. The CAROLINA ALE HOUSE uses a large, tri-fold, faux-leather bound, heavy laminated, and brass tipped menu. [D.29-19, ¶ 16; D.29-31.] The front of the menu prominently displays the federally registered logo of the CAROLINA ALE HOUSE. [D.29-19, ¶ 16; D.29-31.] The logo is on the back page as well. [D.29-19, ¶ 16; D.29-31.] It is a quality, impressive menu, reflective of the high quality, family restaurant services of CAROLINA ALE HOUSE. [D.29-31.] In contrast, for

7

years, the Plaintiff's ale houses have used a disposable, single color placemat menu, reflective of the lower quality, bar food served by Plaintiff. [D.29-30.] Years after the CAROLINA ALE HOUSE restaurants came into business with their family restaurant, tri-fold menu, Plaintiff introduced a much smaller, folded paper menu. [D.29-19, ¶ 16; D.29-32.] While being a substantial improvement over the cheap placemat menu, Plaintiff's menu is entirely different from the menu of CAROLINA ALE HOUSE. [*Compare* D.29-31 *with* D.29-32.] The cover of the Plaintiff's menu features the little Miller's fisherman logo trying to cast a worm in front of a very large, sad looking fish, all of which is superimposed onto the picture of a lighthouse. [D.29-32.] The menus reflect the different themes of the restaurants. [*Compare* D.29-31 *with* D.29-32.] Plaintiff focuses on fishing, and the CAROLINA ALE HOUSE focuses on local college and professional sports teams. [D.29-19, ¶ 6; 29-30; 29-31; 29-32.]

LMR puts great emphasis on creating its own unique identity and "atmospherics," putting concerted effort and funds into the features and appearance of each CAROLINA ALE HOUSE. [D.29-3, ¶ 28.] LMR has not copied anything of Plaintiff's. [*Id*.] In fact, the company that is responsible for the décor and trade dress of the CAROLINA ALE HOUSE restaurants has never even been inside Plaintiff's ale houses. [D.29-34.] That should not be surprising. CAROLINA ALE HOUSE restaurants offer superior food and services, and in no way want to be associated with Plaintiff's chain. [29-3, ¶ 28; 29-19, ¶ 10; 29-34, ¶¶ 4, 5, 7.]

Despite the noticeable differences in the parties' identities, Plaintiff points to alleged confusion regarding whether its Boynton Ale House and Raw Bar is affiliated with the Carolina Ale House. [*See* D.3 *and exhibits thereto*.] Miller's submitted notes supposedly taken by its employees that Plaintiff claims record approximately fifty instances of third party confusion. [D.3, Ex. 12.] This evidence is rank self-serving hearsay upon hearsay and lacking in

8

foundation.  More importantly, and as astutely noted by the Court, it's inherently unreliable.  It records Defendant's employee's speculations regarding the state of minds of largely unidentified third parties.  [D. 57 at 36-37.]  Further, the evidence, even if it were reliable, is entirely underwhelming.  Through February 2009, BCAH served approximately a quarter million people.  [D.29-29, ¶ 8.]  A few dozen instances of confusion amount to a few *hundredths* of a percentile of consumer confusion, and half that amount if you assume Plaintiff served an equivalent number over that period.  Plaintiff also spent significant time suggesting that confusion occurs because it is losing sales.  [*See* D.3.]  Plaintiff ignores the fact that there are hundreds of restaurants in Boynton Beach, including three bar style restaurants – the Village Tavern, Bar Louie, and Slanty's Irish Pub - located across the street from Plaintiff.  [D.29-33; D.33, ¶¶ 6-7; D.53, p. 20.]  At least a dozen bars and restaurants have opened within one mile of Plaintiff's Boynton location since BCAH, to include the Village Tavern.  [D.29-33; D.33, ¶¶ 6-7; D.53, p. 20.]  Indeed, Miller's admits that the Village Tavern is so popular that people wait outside to eat there.  [D.53, p. 27.]  Additionally, the country is experiencing the worst economic climate since the great depression, and sales across most businesses have drastically decreased.  BCAH also experienced lost sales which are likely attributable to increased competition and a weakened economy.  [D.33, ¶ 8.]

Plaintiff is being entirely untruthful when it attempts to persuade the Court that LMR or its Boynton licensee attempt to mimic Plaintiff or deceive customers into believing that CAROLINA ALE HOUSE restaurants are somehow affiliated with or the same as Plaintiff's chain.  Unfortunately, the record of Plaintiff's prior lawsuits shows a well established pattern of such conduct.

### C. Status of Discovery

Since discovery has opened, Plaintiff served its initial disclosures, a copy of which are attached hereto as Exhibit A. Those disclosures reveal nothing that was not already before the Court at the preliminary injunction stage. Plaintiff has not supplemented its disclosures.

BCAH timely produced the expert report of Dr. Ron Butters, one of the foremost linguists in the United States. His report is attached hereto as Exhibit B. Dr. Butters explains at length why the term "ale house" is a generic term as applied to restaurants and that the term BOYNTON, JUPITER, GARDENS, et al., appearing before Defendant's trade names are mere geographical descriptors of the location of particular restaurants. Defendant did not produce any expert reports or disclosures, and did not produce any opinion in rebuttal to Dr. Butters. The Affidavit of Lou Moshakos is attached hereto as Exhibit B and the Affidavit of John Duranko at Exhibit C.

Respectfully submitted, this the 14th day of May, 2010.

**Attorneys for Defendant Boynton Carolina Ale House LLC**

By: */s/Anthony J. Biller*
N.C. State Bar No.: 24,117
E-mail: abiller@coatsandbennett.com
COATS & BENNETT, PLLC
1400 Crescent Green, Suite 300
Cary, North Carolina 27518
Telephone: (919) 854-1844
Facsimile: (919) 854-2084
Of Counsel

By: */s/ Jeffrey L. Hochman*
JEFFREY L. HOCHMAN
Florida Bar No.: 902098
E-mail: Hochman@jamgb.com

JOHNSON, ANSELMO, MURDOCH, BURKE,
   PIPER & HOCHMAN, P.A.
2455 E. Sunrise Blvd., 10th Floor
Fort Lauderdale, FL 33304
Telephone: (954) 463-0100
Facsimile: (954) 463-2444

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on the 14th day of March 2010, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

                                          */s/ Jeffrey L. Hochman*
                                          JEFFREY L. HOCHMAN
                                          Florida Bar No.: 902098
                                          HUDSON C. GILL
                                          Florida Bar No. 15274
                                          JOHNSON, ANSELMO, MURDOCH,
                                          BURKE, PIPER & HOCHMAN, P.A.
                                          2455 E. Sunrise Blvd., 10th Floor
                                          Fort Lauderdale, FL 33304
                                          Telephone: (954) 463-0100
                                          Facsimile:  (954) 463-2444
                                          Attorneys for BOYNTON CAROLINA ALE HOUSE, LLC

## SERVICE LIST

**Miller's Ale House, Inc., v. Boynton Carolina Ale House, LLC**
**Case No.:  09-80918-CIV-MARRA-J**
**United States District Court, Southern District of Florida**

**PLANTIFF'S ATTNY:**
Mr. Wesley A. Lauer
E-Mail: wesley.lauer@akerman.com
Akerman Senterfitt
222 Lakeview Avenue
4th Floor Esperante Building
West Palm Beach, FL 33401-6147
Telephone: (561) 671-3664
Facsimile:  (561) 659-6313

**Co-Counsel for Plaintiffs:**
Mr. J. Rodman Steele, Jr.
E-Mail:  rodman.steele@novakdruce.com
Mr. Jerold I. Schneider
Email:  jerod.schneider@novakdruce.com
Novek Druce & Quigg, LLP
City Place Tower
525 Okeechobee, 15th Floor
West Palm Beach, FL 33401
Telephone:  561-838-5229
Facsimile:  561-838-5578

**DEFENDANT'S ATTY:**
Anthony J. Biller, Esq.
N.C. State Bar No.: 24,117
E-mail:  abiller@coatsandbennett.com
COATS & BENNETT, PLLC
1400 Crescent Green, Suite 300
Cary, North Carolina 27518
Telephone: (919) 854-1844
Facsimile: (919) 854-2084

**Co-Counsel for Defendant:**
Jeffrey L. Hochman, Esq.
E-mail:  Hochman@jamgb.com
Hudson C. Gill, Esq.
E-mail:  hgill@jamgb.com
JOHNSON, ANSELMO, MURDOCH, BURKE, PIPER & HOCHMAN, P.A.
2455 E. Sunrise Blvd., 10th Floor
Fort Lauderdale, FL 33304
Telephone: (954) 463-0100
Facsimile:  (954) 463-2444